```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
ROKU INC.,                                                         :
                                                                   :
                              Plaintiff,                           :
                                                                   :           22-cv-0850 (LJL)
            -v-                                                    :
                                                                   :          OPINION AND ORDER
THE INDIVIDUALS, CORPORATIONS, LIMITED                             :
LIABILITY COMPANIES, PARTNERSHIPS, AND                             :
UNINCORPORATED ASSOCIATIONS IDENTIFIED                             :
ON SCHEDULE A HERETO,                                              :
                                                                   :
                              Defendants.                          :
                                                                   :
-------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/20/2022

LEWIS J. LIMAN, United States District Judge:

Plaintiff Roku Inc. ("Plaintiff" or "Roku") brings claims for trademark infringement and counterfeiting under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125(a), and unfair competition under New York common law against 125 defendants identified in Schedule A to the complaint ("Defendants"). Plaintiff alleges that Defendants sell counterfeit products on Amazon and Wish that each infringe upon some or all of their fourteen trademarks related to their Roku products.

For the following reasons, Plaintiff's motion for a preliminary injunction is denied.

## BACKGROUND

Roku[1] manufactures a variety of digital media players and accessories—including remotes—for video streaming. Dkt. No. 1 ¶ 14. It holds various registered trademarks related to those products (collectively, the "Trademarks"). As relevant here, the Trademarks include:

---

[1] The word "Roku" translates to "six" in English. *See* Dkt. No. 1-1 at ECF p. 9.

- Reg. No. 6,464,718, on the word "STREAMBAR," consisting of standard characters and without claim to any particular font style, size, or color (the "STREAMBAR Mark"), Dkt. No. 1-1 at ECF p. 1;

- Reg. No. 6,076,830, on the purple directional control button used on Roku remote controls (the "Purple Directional Control Button Mark"), *id.* at ECF p. 5;

- Reg. Nos. 5,886,527, 4,937,513 and 3,177,66, on the word "ROKU," consisting of standard characters and without claim to any particular font style, size, or color (the "ROKU Marks"), *id.* at ECF pp. 9, 32, 57;

- Reg. No. 5,886,526, on the words "ROKU TOUCH," consisting of standard characters and without claim to any particular font style, size, or color (the "ROKU TOUCH Mark"), *id.* at ECF p. 13;

- Reg. Nos. 5,151,588 and 4,286,059, on the word "ROKU" in stylized lettering in white on a purple background (the "Stylized White on Purple ROKU Marks"), *id.* at ECF pp. 17, 49;

- Reg. No. 4,937,515, on the word "ROKU" in stylized lettering in white on a purple textured fabric tag background (the "Stylized White on Purple Fabric Tag ROKU Mark"), *id.* at ECF p. 22;

- Reg. Nos. 4,937,514 and 4,286,058, on the word "ROKU" in stylized lettering (the "Stylized ROKU Marks"), *id.* at ECF pp. 27, 53;

- Reg. Nos. 4,843,920 and 4,839,473, on the configuration and material composition comprising a fabric tag in purple attached to the housing of the goods (the "Purple Tag Marks"), *id.* at ECF pp. 37, 41;

- Reg. No. 4,618,984, on the words "STREAMING STICK," consisting of standard characters and without claim to any particular font, style, size, or color (the "STREAMING STICK Mark"), *id.* at ECF p. 45.

Defendants are 125 merchants on Amazon and Wish, both of which are online marketplaces.  Plaintiff alleges that Defendants sell products through Amazon and Wish that are counterfeit and that each infringe upon some or all of the Trademarks.  Plaintiff further states that, to the best of its knowledge, Defendants are not authorized to use the Trademarks or to resell genuine Roku products.  Dkt. No. 8 ¶¶ 17, 21.

**PROCEDURAL HISTORY**

Plaintiff filed its complaint on February 1, 2022, along with a proposed Order to Show Cause with Emergency Relief and an application for a preliminary injunction. Dkt. Nos. 1, 5. The Court entered the Order to Show Cause and Temporary Restraining Order the same day. Dkt. No. 14. Several groups of defendants filed oppositions to Plaintiff's application for a preliminary injunction; many of those defendants have since reached settlement agreements with Plaintiff and are no longer in the case. Dkt. Nos. 22–26, 31. Roku filed a reply brief on February 26, 2022. Dkt. No. 35. The Court held a hearing on the application for a preliminary injunction on February 28, 2022.

**LEGAL STANDARD**

"A party seeking a preliminary injunction must demonstrate: (1) 'a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor'; (2) a likelihood of 'irreparable injury in the absence of an injunction'; (3) that 'the balance of hardships tips in the plaintiff's favor'; and (4) that the 'public interest would not be disserved' by the issuance of an injunction." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (alteration adopted) (quoting *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)). "A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (citations omitted) (quoting *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987)). These standards apply with equal force where defendants have not appeared and the motion for a preliminary injunction is unopposed. *See, e.g.*, *JTH Tax, Inc. v. Sawhney*, 2019 WL 3051760, at *2 (S.D.N.Y. July 11, 2019) (applying

3

these standards to an unopposed preliminary injunction motion); *cf. Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020) ("It is important to remember that 'a defendant is always free to ignore the judicial proceedings and risk a default judgment.'" (alterations adopted) (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982))).

## DISCUSSION

As noted above, Plaintiff seeks a preliminary injunction against the 106 defendants who remain in the case.[2] Of those defendants, only one—YOSUN—has appeared and has filed an opposition to Plaintiff's application for a preliminary injunction. The Court therefore considers Plaintiff's application for a preliminary injunction as against YOSUN. It then turns to the remaining defendants.

---

[2] As set forth in the various notices of voluntary dismissal, Dkt. Nos. 33, 36, 38, 41–43, and in Plaintiff's reply brief, Dkt. No. 35, Plaintiff has voluntarily dismissed its claims against defendants ENWShop (8), XLGames (41), eStarPro (10), Fancer (13), JRSMART (18), Moose Store (29), Mumuyu (30), MonsterKing (27), hglovece (81), Shenzhen ePath Electronic Ltd. (107), Premier Electronic Parts, Inc. (36), and Tangxi (39), as well as all the defendants who have appeared and filed oppositions to the order to show cause with the exception of YOSUN, including ENJOYLink Direct (7), EWOS Direct (11), JC-Sky (15), and SY_Unique (38). The latter group also includes defendants who the opposition brief refers to as "OMAIC 1" and "OMAIC 2." Dkt. Nos. 26, 31. No defendant listed on Schedule A is named "OMAIC"; five defendants, however, have "OMAIC" listed as the "brand" of their product on Amazon, including ER Group (9), LEMUS (22), LOTI CANADA STORE (23), PINE APPLE STORE (35), YAOQI (44). Broadly, those five defendants fit into two categories. LEMUS (22) lists OMAIC as the brand of its product and describes the product as "OMAIC Universal Remote Control for TLC-Roku-TV-Remote All TCL Roku Smart LED LCD 4k TVs." Dkt. No. 12-21. The remaining four defendants sell what appear to be entirely identical products to each other and use identical descriptions and advertising. Dkt. Nos. 12-8, 12-22, 12-34, 12-43. The four Amazon listings differ only in the name of the seller. The opposition brief provides no indication as to whether it refers to one or all of these defendants. Plaintiff's reply, Dkt. No. 35 at 3 n.5, notes that Plaintiff withdraws its application for a preliminary injunction as to defendants LEMUS (22) and PINE APPLE STORE (35), but it does not reference the others. Accordingly, the Court treats "OMAIC 1" as referring to LEMUS and "OMAIC 2" as referring to PINE APPLE STORE only. Finally, the Court denies any application for a preliminary injunction against Amzon-USACA (1) for the same reason it did not enter the TRO against that defendant, *see* Dkt. No. 14 at 2; Plaintiff has submitted no evidence of any allegedly infringing listings by that defendant. The Court therefore considers Plaintiff's application for a preliminary injunction only with regard to the remaining 106 defendants.

4

I.      YOSUN

Defendant YOSUN Direct is a seller on Amazon. Dkt. No. 12-44. Its product is a remote control, entitled "YOSUN RC280 Universal Remote for TCL-Roku-TV-Remote, for All TCL Roku Smart 4K HD LED TV, with Shortcut Buttons." *Id.* Underneath the title and price, it has a section for brand and states that the brand is YOSUN. *Id.* In the product description, it states: "[COMPATIBILITY]  The remote ONLY Compatible with All TCL Roku Smart LED TVs.  Please not be confused with the Roku Remote, which is used for the Roku Stick or Roku Player (NOT for Roku 1 / 2 / 3 / 4 Or Roku Stick)." *Id.*

The Court turns first to the likelihood of Plaintiff's success on the merits of its trademark infringement claim against YOSUN. The YOSUN remote, pictured below, is a small black rounded remote, with a directional control button, various other control buttons, and buttons that say "Netflix," "Hulu," "Roku Channel," and "Disney+":



The YOSUN remote and description nowhere include the words STREAMBAR, ROKU TOUCH, or STREAMING STICK; it therefore plainly does not infringe upon the STREAMBAR Mark, the ROKU TOUCH Mark, or the STREAMING STICK Mark. Its

5

directional control button is blue; it therefore does not infringe upon the Purple Directional Control Button Mark.  The remote and description do not use the word "ROKU" in white letters on a purple background, and there is no fabric tag attached to the remote.  As such, the product does not infringe upon the Stylized White on Purple ROKU Marks, Stylized White on Purple Fabric Tag ROKU Mark, or the Purple Tag Mark.

The product does, however, include a button labeled "ROKU Channel," with "ROKU" written in Roku's stylized lettering.  Additionally, as indicated above, the word "Roku"—in regular text—is used several times in the product title and description.  Plaintiff therefore argues that YOSUN's product infringes upon the five ROKU Marks and Stylized ROKU Marks.  Dkt. No. 35 at 3–4.

To prevail on trademark counterfeiting and infringement claims, a plaintiff must establish that it has a valid mark entitled to protection and that the defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods.  *Virgin Enterprises Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003).  To establish the former, a plaintiff may provide a certificate of registration with the U.S. Patent and Trademark Office for the mark as prima facie evidence of its validity.  *See Lane Capital Management, Inc. v. Lane Capital Management, Inc.*, 192 F.3d 337, 345 (2d Cir. 1999).  Plaintiff may establish the latter— likelihood of confusion—through the eight factors set forth in *Polaroid v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961): the strength of the plaintiff's mark, the degree of similarity between the two marks, the proximity of the parties' areas of commerce, the likelihood that the plaintiff will bridge the gap separating their areas of activity, actual consumer confusion, whether the defendant acted in bad faith or was otherwise reprehensible in adopting the mark, the quality of the defendant's product, and the sophistication of the relevant consumer group.  *Id.*;

*see also Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016).

However, where counterfeit items are involved, the court "need not undertake a factor-by-factor analysis under *Polaroid* because counterfeits, by their very nature, cause confusion." *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003); *see also WowWee Group Ltd. v. Meirly*, 2019 WL 1375470, at *7 (S.D.N.Y. Mar. 27, 2019).

Roku has sufficiently established that the ROKU Marks and the ROKU Stylized Marks are valid marks entitled to protection by providing its certificates of registration with the U.S. Patent and Trademark Office for the marks, *see* Dkt. No. 8-1, which constitute prima facie evidence of their validity. The remaining question, therefore, is whether YOSUN's use of the ROKU Marks and the Stylized ROKU Marks is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods.

First, with respect to the ROKU Marks, the portion of the Amazon listing provided by Plaintiff, Dkt. No. 12-44, uses the non-stylized text version of the word "ROKU" eight times. Each of these instances refers explicitly not to the remote itself but to legitimate Roku products: (1) "Universal Remote for *TCL-Roku-TV*"; (2) "for All *TCL Roku Smart 4K HD LED TV*"; (3) "ONLY Compatible with ALL *TCL Roku Smart LED TVs*"; (4) "not be confused with the *Roku Remote*"; (5) "used for the *Roku Stick*"; (6) "used for the . . . *Roku Player*"; (7) "NOT for *Roku 1 / 2 / 3 / 4*"; and (8) "NOT for . . . *Roku Stick*." Plaintiff's briefing provides no explanation as to why this use of the ROKU Marks is likely to cause consumer confusion as to the origin or sponsorship of YOSUN's remote, instead addressing the question of consumer confusion only very generally, Dkt. No. 6 at 11, and focusing exclusively on confusion stemming from the use of the Stylized ROKU Marks on the ROKU Channel button and not on confusion stemming from the use of the ROKU Marks in the product title and description, Dkt. No. 35 at 4–8. The title of

the product states clearly that it is a YOSUN remote, and the listed brand of the remote is YOSUN, not Roku.  Under these circumstances, it is not readily apparent that consumers would likely be confused by the use of the word Roku to refer to genuine Roku products that the YOSUN remote is—or is not—compatible with, and Plaintiff has not carried its burden to show otherwise.

With respect to the Stylized ROKU Marks, the YOSUN remote and listing uses the stylized version of the word "ROKU" once—on the "ROKU Channel" button.  The ROKU Channel button is the third of four buttons; the remaining three have the logos of "Netflix," "Hulu," and "Disney+," each in stylized writing, equivalent to the ROKU Channel button.  From appearance, the four are indistinguishable, except that they refer to each of four different, and competing, streaming platforms each of which is accessible as an application on smart TVs, *see* Feb. 28, 2022 Hearing Transcript ("Hearing Tr.") at 6, and which allow users to stream movies and TV shows.  They serve the function, common to many remotes, of permitting the user a shortcut to launch a frequently used streaming application, for ease of access.  YOSUN's use of the Stylized ROKU Marks on the shortcut button thus is not "likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods."  *Nawab*, 335 F.3d at 146.  No reasonable consumer could think from YOSUN's use of the logo for "ROKU Channel" that the remote originated with or was sponsored by Roku any more than they could think it originated with or was sponsored by Netflix, Hulu, or Disney+.  The use of the Stylized ROKU Mark, combined with the use of the stylized marks for the other three streaming services, could not reasonably convey that the remote originated with any one of the streaming services, much less from all of them combined.   The only understanding a reasonable consumer could take away is that the four buttons are shortcuts to various competing streaming applications.  They

8

would not think that the remote was created—or sponsored—by Netflix, Hulu, Roku, and Disney+. Indeed, that the button says "Roku Channel" and not "Roku" further reinforces this; "Roku Channel" refers specifically to the streaming service offered by Roku, not the hardware and remotes they also sell. Because the context of the use of the Stylized ROKU Marks on the device does not appear likely to create consumer confusion as to the origin or sponsorship of the remote, and because Plaintiff has submitted no evidence to the contrary, it has not carried its burden to show a likelihood of success on the merits as to these marks.[3]

YOSUN also raises fair use and nominative fair use arguments. Fair use is an affirmative statutory defense to trademark infringement; "it is only when a plaintiff has shown likely confusion . . . that a defendant could have any need of [this] affirmative defense." *KP Permanent Make-Up Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 120 (2004). The Court therefore need not reach any question as to whether YOSUN's use of the ROKU Marks and the Stylized ROKU Marks constitutes fair use here, because it has found that Plaintiff has not carried its burden to show likely confusion. The same is true of nominative fair use, although it does not operate as an affirmative defense. *See International Information Systems Security Certification Consortium, Inc. v. Security University, LLC*, 823 F.3d 153, 156 (2d Cir. 2016). Instead, "it is

---

[3] Plaintiff argues that several of the *Polaroid* factors weigh in its favor, including the strength of the marks, the similarity of the marks, the likelihood of bridging the gap, and the sophistication of the consumer in the relevant market. Nonetheless, "[n]o one of the *Polaroid* factors is dispositive, and the list is not exhaustive; 'the analysis of the factors is not a mechanical process.'" *Estee Lauder Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1510 (2d Cir. 1997) (quoting *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 391 (2d Cir. 1995)). Here, by reciting four of the *Polaroid* factors but not speaking to actual confusion, the proximity to the product referenced by YOSUN's use of the mark (which is the Roku Channel rather than the Roku remote), or the broader inquiry as to whether "numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark," *Arrow Fastener*, 59 F.3d at 390–91, Plaintiff has not carried its burden to show a likelihood of success on the merits under the *Polaroid* factors.

the Plaintiff's burden to plead sufficient factual content to plausibly allege why Defendant's use of its trademarks is not permissible under the nominative fair use doctrine." *Chanel, Inc. v. RealReal, Inc.*, 449 F. Supp. 3d 422, 437 n.15 (S.D.N.Y. 2020). Plaintiff has not carried its burden to show likelihood of confusion at all.

## II.     The Remaining 105 Defendants

Plaintiff also seeks a preliminary injunction against 105 additional defendants, none of whom have submitted oppositions to the application or otherwise appeared in this case. As the discussion of the YOSUN remote demonstrates, however, the question of risk of consumer confusion cannot be addressed wholesale. It requires analysis of the particular use of a mark.

Plaintiff's specific evidence with respect to each of these defendants in support of its application consists only of Dkt. No. 12, screenshots of remote controls sold by each of the defendants. From the Court's review of the exhibits at Dkt. No. 12, the allegedly infringing listings vary greatly. Some—for example, defendant PrythefirtowatchjH's (101) listing, at Dkt. No. 12-100—may indeed raise valid infringement concerns. That remote includes a purple directional control button, similar to the Purple Directional Control Button Mark, as well as a purple fabric tab that says "ROKU" on it in stylized white lettering, similar to the Stylized White on Purple ROKU Marks, the Stylized White on Purple Fabric Tag ROKU Mark, and the Purple Tag Marks. On the other end of the spectrum, some of the listings do not appear to raise any infringement concerns. For example, defendant Voshowylor's (40) listing, Dkt. No. 12-39, has no fabric tag, does not use the stylized word Roku anywhere on the remote or in the listing text, has a directional control button that, although it is purple, is far darker than the directional control button on Roku remotes, and does not even use the word "ROKU" in the product title, instead using it only sparingly in the description, such as to state that "[t]his universal remote control is compatible with ROKU 1/2/3/4." It is not readily apparent how this listing infringes

10

upon any of Plaintiff's trademarks, and Plaintiff makes no arguments and provides no evidence to assist with that question. Many of the other listings have no purple directional pad, no purple fabric tab, no Roku button on the remote, do not include the word Roku on the remote, do not utilize the stylized version of the word Roku anywhere on the remote or in this listing, and merely use the word Roku in the product title and description; those include defendants Chinylink (4), Dkt. No. 12-3; ER Group (9), Dkt. No. 12-8; FAMILY_GULF (12), Dkt. No. 12-11; Kamhaeng (19), Dkt. No. 12-18; LOTI CANADA STORE (23), Dkt. No. 12-22; NKF (32), Dkt. No. 12-31; yangjianshe (43), Dkt. No. 12-42; YAOQI (44), Dkt. No. 12-43; gidaechi100 (75), Dkt. No. 12-74; ssagpalja (108), Dkt. No. 120-107. Whether each of these listings infringes upon the ROKU Marks turns upon whether the use of the word Roku in the listings is likely to cause consumer confusion. At the hearing on the motion for a preliminary injunction, Plaintiff's counsel acknowledged the detailed, fact-specific analysis required to make such a determination:

> The Court: You also don't object to, as a general principle, somebody selling a remote control that is compatible with Roku TVs?
>
> Mr. Tom: I think as [a] general principle, no. Obviously, the devil is in the details, but as a general principle, no.
>
> The Court: So with respect to the advertisement, how is somebody going to let consumers know that the remote control is compatible with Roku TV other than what Yosun did in this case?
>
> Mr. Tom: I mean, I think, first of all, it would not have the Roku channel button and would not have Roku written in a way that infringes on Roku's trademark. I think that's the simplest answer and I think the best answer. There are many remotes out there that –
>
> The Court: So it wouldn't be so much the advertisement saying it's compatible with Roku TV that [is] an infringement?
>
> Mr. Tom: I think it's a combination of the two, your Honor. I think if they had just said simply, blank remote, which is compatible with a Roku TV, that is a different case. And I think some – I take that as more

>   challenging for us as a plaintiff to enforce our trademark on because I think there are some validities to a fair use argument that products . . . ought to state[] how they work in the marketplace. Again, it depends on how they advertise and use Roku, how prominent the name Roku is compared to the brand name, et cetera.

Hearing Tr. at 11–12. Plaintiff concedes that such a case—the very case presented by at least the ten defendants listed above—is a "challenging" one, which would depend on the details of the advertising.

However, Plaintiff makes no specific arguments about each of these remote controls. It says nothing about which defendants allegedly use words, styles, or features trademarked by Roku, and why such use constitutes infringement. It makes no arguments as to why it is likely to succeed on the merits of such a case and has done no work to provide the Court with its arguments as to how the details of the advertising in each of these listings supports a likely finding of infringement.

In short, Plaintiff has put in no evidence and made no arguments on this question for each of the 105 remaining defendants; as such, it has not carried its burden to show a likelihood of success on the merits entitling it to a preliminary injunction. Plaintiff may have valid claims on which it is likely to succeed against all, some, or none of these defendants. As indicated above, some facially appear to raise legitimate infringement concerns, others do not appear to raise any infringement concerns, and the majority fall somewhere in the middle. On the record before the Court, however, Plaintiff has not done the work required to make that showing that with respect to any of the remaining 105 defendants. Plaintiff's application for a preliminary injunction against those defendants is therefore denied without prejudice to renewal with additional evidence and argument supporting the application.

## CONCLUSION

The motion for a preliminary injunction is DENIED.

The motion to seal Schedule A to the complaint and Exhibit 2 to the Declaration of Karina Levitian, Dkt. No. 9, is denied as moot. Plaintiff is directed to file these documents on the public docket by May 27, 2022.

The Clerk of Court is respectfully directed to close Dkt. No. 9.

SO ORDERED.

Dated: May 20, 2022
      New York, New York

                                   LEWIS J. LIMAN
                                United States District Judge